IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>SHAWN LEE BUTTS,<br><br>Defendant. | CR 22–33–M–DWM<br><br><br>OPINION<br>and ORDER |

On June 24, 2022, Defendant Shawn Lee Butts was indicted on a single count of felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). (Doc. 10.) In 2006, Butts was convicted of making a false statement during a firearm transaction in violation of 18 U.S.C. § 922(a)(6). (Doc. 1-1 at 4.) Following witness reports of gunfire on Butts's property in the spring of 2022, a search warrant was executed and law enforcement recovered two firearms and assorted ammunition from Butts's travel trailer and one firearm and .22 caliber ammunition from his residence. (*Id.* at 3.)

Butts seeks to dismiss the present indictment in light of the Supreme Court's recent decision in *New York State Rifle and Pistol Association, Inc. v. Bruen*, \_\_\_ U.S. \_\_\_, 142 S. Ct. 2111 (2022), arguing that § 922(g)(1) violates his Second Amendment right to possess firearms. (Doc. 26); *see* Fed. R. Crim. P. 12(b). The

1

government opposes the motion. (Doc. 30.) Butts did not file a reply brief. Oral argument was held on October 31, 2022. Having considered the briefing and the parties' oral arguments, Butts's motion is denied.[1]

## ANALYSIS

Section 922(g)(1) states in pertinent part, "[i]t shall be unlawful for any person . . . who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year; . . . to . . . transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition . . . ." Butts's motion is premised on the notion that *Bruen* upset the legal applecart for firearms regulation, specifically undermining felon dispossession laws. (*See* Doc. 27 at 5 (describing *Bruen* as "mark[ing] a dramatic shift in Second Amendment law").) Because he is incorrect as to this threshold issue, his motion is denied.

The Second Amendment guarantees: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. In 2008, in *District of Columbia v. Heller*, the Supreme Court recognized an individual right under the

---

[1] Although briefed as a facial challenge, Butts filed affidavits before oral argument and clarified at that argument that he is also raising an as-applied challenge. (*See* Docs. 31-1, 31-2, 31-3.) That challenge—based on Butts's possession of guns at his residence for the purpose of hunting—does not change the outcome.

Second Amendment to possess firearms "in common use," such as handguns, for traditionally lawful purposes, such as self-defense in the home. 554 U.S. 570, 627 (2008). Two years after *Heller*, in *McDonald v. City of Chicago, Illinois*, the Court recognized the Second Amendment to be a fundamental right that applied to the states pursuant to the Due Process Clause of the Fourteenth Amendment. 561 U.S. 742, 778 (2010). For the decade following *Heller* and *McDonald*, federal courts uniformly utilized a "two-step" approach to firearms regulations, applying strict or intermediate scrutiny and conducting a means-ends analysis to determine whether the state's interest in a regulation was sufficient to overcome whatever burden the law placed on an individual's Second Amendment right. *See Bruen*, 142 S. Ct. at 2125. In 2022, however, the Supreme Court held that this two-step approach was "one step too many." *Id.* at 2127.

In *Bruen*, the Supreme Court resolved a challenge to a New York law that required a person to demonstrate that "proper cause" exists in order to obtain a concealed carry license for a firearm. 142 S. Ct. at 2123. The Court held that the law was unconstitutional because it required applicants to demonstrate a "special need" to obtain the license, placing an impermissible restriction on the Second Amendment's protection of an "individual's right to carry a handgun for self-defense outside the home." *Id.* at 2122–23 The Court explained that "[w]hen the Second Amendment's plain text covers an individual's conduct, the Constitution

3

presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.* at 2129–30. Only after the government makes that showing "may a court conclude that the individual's conduct falls outside the Second Amendment's unqualified command."[2] *Id.* at 2130 (quotation marks omitted). Put simply, "[b]ecause the Second Amendment was adopted in 1791, only those regulations that would have been considered constitutional then can be constitutional now." *United States v. Price*, 2022 WL 6968457, at *1 (S.D.W.V. Oct. 12, 2022). Under this standard, there is no "means-ends" analysis. *Bruen*, 142 S. Ct. at 2127–29.

While *Bruen* clarifies the standard courts must apply in assessing firearm

---

[2] Recognizing that "originalism" is apparently the method by which the Constitution is currently to be interpreted, the doctrine is not so easily applied. In trying to take measure of "originalism" it is necessary to distinguish between facts and opinions. They are not antagonist to each other; they belong in the same intellectual realm. Facts inform opinions, and opinions inspired by different interests and passions can differ wildly, as with originalism, and yet still be legitimate if they respect factual truth. Freedom to have any opinion on any historical subject is a charade unless information is guaranteed and the facts themselves are not in dispute. Originalism may not meet this standard. Factual truth, as distinct from rational truth, informs legal thinking but the problem is defining factual truth by "amateur historians" like most judges. *McDonald*, 561 U.S. at 910 (Stevens, J., dissenting). The reality is that academic historians have demonstrated the impossibility of ascertaining facts without interpretation since facts themselves must first be picked out from the chaos of happenings and then fitted into a "story" that is told from only one perspective which may have nothing to do with what originally occurred.

4

regulations, *Bruen*'s impact on existing precedent is less clear. This uncertainty takes two forms: (1) the impact of what Butts characterizes as Supreme Court "dicta" and (2) the precedential value the Ninth Circuit's decision in *United States v. Vongxay*, 594 F.3d 1111 (9th Cir. 2010), which upheld § 922(g)(1) pre-*Bruen*. As it turns out, contrary to Butts's position, both provide independent, legal grounds for denying Butts's motion.

While *Heller* held that the Second Amendment encompasses an individual right to possess a functioning firearm in the home for the purposes of self-defense, 554 U.S. at 595, 635, the Court was careful to add an important caveat: "[l]ike most rights, the right secured by the Second Amendment is not unlimited." *Id.* at 626; *accord McDonald*, 561 U.S. at 786 ("[I]ncorporation does not imperil every law regulating firearms.") *and Bruen*, 142 S. Ct. at 2138 n. 9 ("To be clear, nothing in our analysis should be interpreted to suggest the unconstitutionality of the 43 States' 'shall issue' licensing regimes[.]"). More specifically, the Court stated:

> Although we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places, such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.

*Heller*, 554 U.S. at 626–27. These measures were considered "presumptively lawful," *id.* at 627 n.26, and the Court recognized that certain individuals may be

5

"disqualified from the exercise of Second Amendment rights," *id.* at 635. Two years later, in *McDonald*, the Court "repeat[ed] [its] assurances" that felon dispossession laws remain valid. 561 U.S. at 786.

In *Bruen*, the majority opinion states that its holding was "in keeping with *Heller*." 142 S. Ct. at 2126. Consistently, *Bruen* repeatedly uses the term "law-abiding citizen" in reference to an individual's Second Amendment rights. *See, e.g., id.* at 2122 (*Heller* and *McDonald* "recognized that the Second and Fourteenth Amendments protect the right of an ordinary, *law-abiding citizen* to possess a handgun in the home for self-defense"); *see id.* (concluding that right extends outside the home for "ordinary, *law-abiding citizens*"); *id.* at 2133 (instructing courts to consider "how and why the regulations burden a *law-abiding citizen's* right to armed self-defense"); *id.* at 2134 (describing petitioners are "two ordinary, *law-abiding*, adult citizens"); *id.* at 2138 (noting that there is no historical traditional "limiting public carry to those *law-abiding citizens* who demonstrate a special need for self-defense"); *id.* at 2150 (historical analogues advanced by New York fail because "none operated to prevent *law-abiding citizens* with ordinary self-defense needs from carrying arms in public for that purpose"); *id.* at 2156 (no historical record requiring "*law-abiding, responsible citizens*" to demonstrate a need to obtain a license to carry); *id.* (New York law violates the Second Amendment because it "prevents *law-abiding citizens* with ordinary self-defense

6

needs from exercising their right to keep and bear arms"). The concurring opinions of both Justices Alito and Kavanaugh further affirm that *Bruen* did not disturb what was said in *Heller* about the restrictions imposed on possessing firearms. *Id.* at 2162 (Kavanaugh, J., concurring); *id.* at 2157 (Alito, J., concurring).

Butts argues, however, that both the limiting language from *Heller* and *Bruen*'s ubiquitous use of "law-abiding citizens" can be ignored as dicta. Not so. The Ninth Circuit has specifically determined that *Heller*'s language regarding lawful long-standing gun restrictions on felons is not nonbinding dicta: "Courts often limit the scope of their holdings, and such limitations are integral to those holdings." *Vongxay*, 594 F.3d at 1115. The same holds true for *Bruen*'s use of the "law-abiding citizen" proviso. And, even if these components of *Heller* and *Bruen* are in fact dicta, Supreme Court "dicta" commands "deference" and may not be "lightly" discarded. *United States v. Montero-Camargo*, 208 F.3d 1122, 1132 n.17 (9th Cir. 2000) (en banc). Ultimately, because *Bruen* does not disturb the felon dispossession component of *Heller*, it does not render § 922(g)(1) unconstitutional. *See United States v. Siddoway*, 2022 WL 4482739, at *1–2 (D. Idaho, Sept. 27, 2022) (finding that further "examination is unnecessary at this time" because "at least five justices indicated their explicit intent" not to overrule *Heller*).

Nor does *Bruen* upset binding precedent in the Ninth Circuit. This Court is

7

bound by Ninth Circuit precedent unless that precedent is "effectively overruled," which occurs when "the reasoning or theory of our prior circuit authority is clearly irreconcilable with the reasoning or theory of intervening higher authority." *Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003) (en banc). "The clearly irreconcilable requirement is a high standard." *Close v. Sotheby's, Inc.*, 894 F.3d 1061, 1073 (9th Cir. 2018) (quotation marks omitted). "[I]t is not enough for there to be some tension between the intervening higher authority and prior circuit precedent, or for the intervening higher authority to cast doubt on the prior circuit precedent." *Id.* (quotation marks omitted).

Consistent with *Heller*, the Ninth Circuit held in *Vongxay* that, "[n]othing in *Heller* can be read legitimately to cast doubt on the constitutionality of § 922(g)(1)." 594 F.3d at 1114. In so concluding, the Ninth Circuit explained that *Heller* recognized that "a variety of tools" exist to combat gun violence, "including some measures regulating handguns," and specifically stated that the opinion should not read "to cast doubt on the longstanding prohibitions on the possession of firearms by felons and the mentally ill." *Id.* at 1115 (citing *Heller*, 554 U.S. at 626–27, 636). As it relates to *Bruen*'s focus on the historical record, the *Vongxay* court went on,

> We observe that most scholars of the Second Amendment agree that the right to bear arms was "inextricably . . . tied to" the concept of a "virtuous citizen[ry]" that would protect society through "defensive use of arms against criminals, oppressive officials, and foreign enemies

8

alike," and that "the right to bear arms does not preclude laws disarming the unvirtuous citizens (i.e. criminal) . . . ."

*Id.* at 1118 (quoting Don B. Kates, Jr., *The Second Amendment: A Dialogue*, 49 Law & Contemp. Probs. 143, 146 (1986)). While that "historical question has not been definitively resolved," *id.*; *see also United States v. Phillips*, 827 F.3d 1171, 1174 (9th Cir. 2016) (providing a thorough aside on how "courts and scholars are divided over how 'longstanding' [firearm] bans really are"), "that limited tension between *Vongxay* and *Bruen* is not enough to find that *Bruen* 'effectively overruled' *Vongxay*," *Siddoway*, 2022 WL 4482739, at *2.

Because this Court is not empowered to disregard this binding precedent, Butts's motion is also denied on this ground. *See id.*; *United States v. Hill*, 2022 WL 4361917, *2–3 (S.D. Cal. Sept. 20, 2022) (concluding that because *Bruen* did not "effectively overrule" *Vongxay*, the court is bound to follow it).

Accordingly, while Butts "would like this Court to scrutinize the history of felon-in-possession statues, such examination is unnecessary at this time." *Siddoway*, 2022 WL 4482739, at *2.

## CONCLUSION

With limited exception,[3] federal gun regulations uniformly have been upheld

---

[3] *United State v. Quiroz*, 2022 WL 4352482, *10 (W.D. Tex. Sept. 19, 2022) (finding historical record does not support criminalization of receipt of firearm while under indictment, *see* 18 U.S.C. § 922(n)); *United States v. Price*, 2022 WL 6968457, *5–6 (S.D.W.V. Oct. 12, 2022) (finding historical record does not

9

in the wake of *Bruen*;[4] this case provides no basis to diverge from that well-trod

---

support criminalization of possession of firearm with altered or obliterated serial number, *see* 18 U.S.C § 922(k), *but* that it does support felon dispossession under § 922(g)(1)).

[4]*United States v. Daniels*, 2022 WL 2654232 (S.D. Miss. July 8, 2022) (analyzing § 922(g)(3) – drug users/addicts); *Clifton v. Dep't of Justice*, 2022 WL 2791355 (E.D. Cal. July 14, 2022) (analyzing § 922(g)(4) – mentally ill); *United States v. Jackson*, 2022 WL 3582504 (W.D. Okl. Aug. 19, 2022) (analyzing § 922(g)(9) – domestic violence); *United States v. Ingram*, 2022 WL 3691350 (D.S.C. Aug. 25, 2022) (analyzing § 922(g)(1) – felons and § 924(c) – drug trafficking); *United States v. Nutter*, 2022 WL 3718518 (S.D.W.V. Aug. 29, 2022) (analyzing § 922(g)(9) – domestic violence); *United State v. Kays*, 2022 WL 3718519 (W.D. Okl. Aug. 29, 2022) (analyzing § 922(g)(8) – protective order and § 922(n) – person under indictment); *United States v. Burrell*, 2022 WL 4096865 (E.D. Mich. Sept. 7, 2022) (analyzing § 922(g)(1) – felon); *United States v. Harper*, 2022 WL 8288406 (N.D. Iowa Sept. 9, 2022) (analyzing § 922(g)(1) – felon and § 922(g)(3) – drug user/addict); *United States v. Cockerham*, 2022 WL 4229314 (S.D. Miss. Sept. 13, 2022) (analyzing § 922(g)(1) – felon); *United States v. Perez-Garcia*, 2022 WL 4351967 (S.D. Cal. Sept. 18, 2022) (analyzing conditions of pretrial supervision under 18 U.S.C. § 3142(c)); *United States v. Hill*, 2022 WL 4361917 (S.D. Cal. Sept. 20, 2022) (analyzing § 922(g)(1) – felon); *United States v. Coombes*, 2022 WL 4367056 (N.D. Okl. Sept. 21, 2022) (analyzing § 922(g)(1) – felon); *United States v. Gonzalez*, 2022 WL 4376074 (7th Cir. Sept. 22, 2022) (analyzing § 922(g)(1) – felon under *Anders* standard); *United States v. Collette*, 2022 WL 4476790 (W.D. Tex. Sept. 25, 2022) (analyzing § 922(g)(1) – felon); *United States v. Siddoway*, 2022 WL 4482739 (D. Idaho Sept. 27, 2022) (analyzing § 922(g)(1) – felon); *United States v. Seiwert*, 2022 WL 4534605 (N.D. Ill. Sept. 28, 2022) (analyzing § 922(g)(3) – drug user/addict); *United States v. Charles*, 2022 WL 4913900 (W.D. Tex. Oct. 3, 2022) (analyzing § 922(g)(1) – felon); *United States v. Daniels*, 2022 WL 5027574 (W.D.N.C. Oct. 4, 2022) (analyzing § 922(g)(1) – felon under compassionate release standard); *United States v. King*, 2022 WL 5240928 (S.D.N.Y. Oct. 6, 2022) (analyzing § 922(g)(1) – felon); *United States v. Riley*, 2022 WL 7610264 (E.D. Va. Oct. 13, 2022) (analyzing § 922(g)(1) – felon); *United States v. Carrero*, 2022 WL 9348792 (D. Utah, Oct. 14, 2022) (analyzing § 922(g)(1) – felon); *United States v. Ridgeway*, 2022 WL 10198823 (S.D. Cal. Oct. 17, 2022) (analyzing § 922(g)(1) – felon); *United States v. Anderson*, 2022 WL 10208253 (W.D. Va. Oct. 17, 2022) (analyzing § 922(g)(9) – domestic violence); *United States v. Trinidad*, 2022 WL 10067519 (D. Puerto Rico

path.

Accordingly, IT IS ORDERED that Butts's motion to dismiss (Doc. 26) is DENIED.

DATED this 31st day of October, 2022.

Donald W. Molloy, District Judge
United States District Court

---

Oct. 17, 2022) (analyzing § 922(g)(1) – felon); *United States v. Minter*, 2022 WL 10662252 (M.D. Pa. Oct. 18, 2022) (analyzing § 922(g)(1) – felon); *United States v. Burton*, 2022 WL 16541139 (D.S.C. Oct. 28, 2022) (analyzing § 922(g)(1) – felon); *United States v. Grant*, 2022 WL 16541138 (D.S.C. Oct. 28, 2022) (analyzing § 922(g)(1) – felon); *United States v. Snead*, 2022 WL 16534278 (W.D. Va. Oct. 28, 2022) (analyzing § 924(c) – drug trafficking).

11